Good morning. May it please the Court, my name is Alan Cates, Law Office of Steven J. Eishaker. This matter is a diversity case from the State Law of Nevada which went out in summary judgment with the lower court finding there was no genuine issue of material fact as to Mr. Eishaker's contract claim. He had a policy of disability income insurance and he had a policy of disability income insurance issued by the defendant. He suffered an attack where he suffered terrible injuries to his face, multiple fractures and possibly brain damage when a pool ball was thrown at him. He was a trial attorney and had to have massive reconstructive surgery to his face. He was disabled because of the surgery for about two months because of his physical problems, but also the instant the attack developed a disabling depression. There's no real issue at all as to his major depression. Well, Dr. Resko treated him for his physical ailments at that time. It wasn't until after the 90 days following the accident that he was diagnosed as in need of a psychiatrist, is that true? That's right. So the real problem I have with this case, he has to be treated, there's no question about the fact that he was treated, but what was he treated for? His physical ailments, would that include the physical ailments causing the depression, which was not treated until the physical ailments were first treated, to get him within the policy? The real question is under the terms of the policy, he had to be treated within those 90 days. But his real problem at the end was depression and a mental condition as opposed to a physical condition. How do you deal with that? Well, first let me clarify on the 90-day point. It doesn't have to be within 90 days of the attack. He just has to have, because there's no issue really, and even the defendant's two experts that examine him agree that he has this disabling depression. There's really not a serious issue as to whether he was disabled in the policy. It's when he got treated and when in his depression he missed a premium payment. Does that entitle the insurance company to forfeit his benefits? Now, if he has any 90-day period between September 16, 1996 and August 13, 1997, where he's both causing disability, then he would have been entitled to a premium waiver, and that waiver would have carried him forward. Premium, his policy had lapsed by the time he was under the care of a physician for depression. Right, but if he's So that triggers a different scenario, which is a 30-day reapplication. Let me clarify that. If at any time he's got that 90 days, they have to refund his money for that 90-day period. Well, that never happened. They were carrying 90 days of unearned premium. If he's, that's the critically important part. If he's disabled for 91 days at any point during that period of September It started after his policy had lapsed. No. The depression started, if you look at the reports of both the attending physician's statement of Dr. Restow at page 118 Well, it may have, but he wasn't under the care of a physician for depression until after his policy had lapsed. But the testimony of Dr. Pepra in deposition is, he doesn't understand that. I analogize this in a brief to somebody who has cancer, and they're seeing, they might be losing weight or something, they're seeing their general practitioner, but isn't diagnosed with the actual cancer until later on. Well, let me, the problem, this isn't a malpractice case. You know, I mean, the language of the policy requires that the person who is disabled be under the care of a physician for the condition that is the disabling condition. So he had to be under the care of a physician for depression. And that didn't happen until after the policy had lapsed. Did it? No, as soon as he was, as soon as he was in depression, I know you're buzzing around, but you got to have a theory. It's true that he wasn't, as the existing situation appears, he did not, the depression, which may have been there before, was not actually diagnosed until later. Isn't that so? That's right. Now, let me give you this scenario and see what you think about it. At the time, as I understand it, the doctors who have looked at him now say that the depression was related to his getting hit in the head and having his finger. That's correct. All right. So now you've got a man who needs his head fixed up, so to speak, and he's suffering from physical injuries and it's also mental, but he's treated for the physical injuries and the doctor doesn't recognize the mental symptoms. Does that come under the policy and say, even though this doctor didn't recognize those symptoms, at the time he was being treated while he was disabled and by a doctor who was qualified to treat the physical illness? You just stated my argument much better than I did. Well, that's essentially, has to be your premise, isn't it? Absolutely, Your Honor. Now, what's the basis in the law for that premise? Well, it's in the policy. The policy language is condition causing a disability. The condition is he got hit in the face with a pool ball and a whole bunch of bad things happened after that and did he, for example, looking at the defendant's briefs, they say, why do we have this? Well, we have this to make sure the guy is disabled and make sure that he's going to return to work. Well, even their own experts say that was never an issue. Clearly, he suffers this terrible depression and it may be possibly organic brain injury stemming from getting hit in the face with a tremendous impact. So he's doing, the question becomes, is the insured doing the best he can to comply with the policy? He's going to a doctor. There's no question he is. And as soon as the issue of depression comes up, he goes, within seven days, he goes immediately to Dr. Pepra. So he's doing the best that he could and it's completely uncontroverted. Dr. Pepra's testimony is the man did not know he needed to get treated for this until sometime in late August, early September of 1997. So how could he have done that? He was diagnosed in September 27th, 1997, with depression. But he waited then seven months to file a claim. Now, so wouldn't he still be precluded because the policy requires that written notice be filed within 30 days of covered loss or as soon as reasonably possible? No, he's not precluded because of the notice prejudice rule. To apply that restriction, the insurance committee would have to show actual prejudice. Would have to what? Have to show prejudice that they couldn't undertake their investigation or something like that. That's a judicially applied rule. Actually, it's familiar to the court, I'm sure, if you've been to the award. But they would have to get around it. They'd have to show that his not making that claim within that window prejudiced them in their claims adjusting. And your authority for that is? Well, it's, well, going back to Union v. Ward, it was never an issue below that that was the case. But Union v. Ward has a great long string of citations about the notice prejudice rule. It's pretty much universally applied in insurance law. All right. Thank you. Well, I have next to no time. Perhaps I'll save my 50 seconds for any further questions. Thank you. Mr. Bales. Good morning. I'm Scott Bales for Appellee Parber Life Insurance Company. The district court correctly ruled that under the terms of the policy, Mr. Ishaker was not entitled to coverage because he had not been under the treatment of a physician for the condition that caused the alleged disability while the policy was enforced. Let me just ask, isn't the physical condition and the mental condition so intertwined that it's more appropriate to treat them as a single condition? This is not a man who goes out and goes back to work and then comes back and later claims injury. He was treated immediately. And why shouldn't the mental condition be considered intertwined with the physical condition? I mean, the physical first and then the mental. I think that approach would be inconsistent with both the policy terms and the facts of this particular case. First, with regard to the facts, the record is clear that Mr. Restro or Dr. Restro, rather, the plastic surgeon, treated Mr. Ishaker only for the physical conditions which he said had resolved to the point that Mr. Ishaker could return to work in November of 1996, within two months of the event that caused the injury. Let me get another drink. Is a misdiagnosis by a qualified physician given the insurance company an out? No, the coverage doesn't depend on diagnosis. The coverage depends on whether you're receiving treatment from a physician for the condition causing the disability. I like that. And Nelson pointed out where he got two conditions, mental and physical. And the doctor recognizes the physical, but doesn't recognize the mental, which is still there and is treating the man. Isn't the doctor, isn't he getting treatment for the condition which caused his disability, which was really the multiple injuries from getting hit with a ball on the head? Well, first, the policy, as Judge Reimer pointed out, the policy isn't a policy that insures against malpractice by a treating physician. I'm not talking about malpractice. I'm talking about a physician who was qualified and misdiagnosed. This is not a malpractice case. This is a condition for which the plastic surgeon treated him. Many cases come up where you go to a, for example, let me give you a case scenario. A guy gets hit, gets in an automobile accident, and his back is in terrible shape. And so he's going to a chiropractor. But in fact, what he's got is cancer. And the chiropractor is treating him for a back condition, but not for cancer. Is he not getting treatment from somebody qualified to treat him? If, if in your hypothetical, he were getting treatment appropriate for the condition that he later claimed caused the disability, then there would be coverage. Well, his cancer caused the disability. That's what he, that's what he was died from. The, the question in the particular case would be whether he was getting treatment for the condition that caused the disability. And that goes back to my answer to Judge Nelson's question. Because here the facts are clear. Dr. Restow, the plastic surgeon, treated him for his physical injury, determined he was capable of going back to work within two months. Mr. Ishaker acknowledged himself that he was able to go back to work within two months based on Dr. Restow's treatment. And he further acknowledged, as the district court noted, that his disability was caused by a different condition, that being depression. Now here, Mr. Ishaker did not even identify that problem until after the policy had lapsed. Now your question suggests a possibly differently worded policy. The policy here didn't say that the insured had to merely be under the treatment of a physician. Some policies do. The policy here instead said that the insured had to be under the treatment of a physician for the condition causing the disability. Moreover, the policy did not say that you merely had to be under the treatment of a physician for the injury. It was specific by a physical injury caused by depression. It seems to me your policy could cover what happened here. Isn't that, and this was a summary judgment, isn't a crucial question that should go to the fact finder as to whether or not the physical condition, getting hit with a ball, with the billiard ball, caused his final disability, which included both physical first and mental later. No. And combined. No. And again, the approach that you're suggesting would read the policy as if it stated that you're covered for any disability arising from an injury if you're under the treatment of a physician. And that's not what the policy says. Qualified physician. A qualified physician. And again, it's important to focus back on the facts of this particular case. The policy lapses, after the policy lapses, Mr. Eshacker for the first time identifies that he has a mental problem and sees a physician. He does that the day after he tries to send in his premiums to revive the formerly lapsed policy. And furthermore, the policy also expressly recognizes circumstances when the requirement of physician treatment might be waived. The policy says that that will be waived if the insurer receives written evidence to its satisfaction that treatment would not be of benefit to the insured. So the policy itself acknowledges when there would be an exception to the requirement. And recognize this is a case where it's undisputed that the condition that's causing the disability is his mental depression. It's undisputed that he did not even identify that condition, much less consult with a or receive treatment for it. He didn't identify it to a physician until after the policy had lapsed. And it was that sequence of events that made it appropriate for the district court to determine if you apply the policy by its terms, which is the way Nevada approaches insurance policies, that coverage would be barred because he never had treatment from a physician for the condition causing a disability until after the policy lapsed. For the condition causing disability, and you say that is not a policy that's going to be waived, it's undisputed fact-questioning under the fact, under the, in this case. Mr. A. Shacker testified directly in his deposition that the condition that he claimed caused his disability was mental depression. He also agreed with Dr. Restow that his physical injuries had not prevented his return to work. And indeed, in fact, he had returned to work in November of 1996. And that also shows that he, in terms of evidence, it seems to me that he tried to return to work, but he never was capable of operating as a lawyer. And he did not really work in the way that a lawyer would be expected to work. And that, I don't know if there are any cases here in Nevada, but there are lots of California cases on that point. But that's not material to the grounds for the entry of summary judgment. The summary judgment is based on the policy provision requiring treatment of a physician for the condition causing disability. And let me go back briefly to the issue of waiver of premium, because premium waiver only kicks in if the insured has a total disability for 90 days. And Mr. A. Shacker never, while the policy was in force, had a total disability for that period. He never was unable to perform the important duties of his profession, and also under the care of a physician for the condition causing the disability during the policy period. So he cannot excuse his nonpayment of premiums based on that language. And Judge Brey, I think you asked about the record. His testimony that I referred to is at page 5 of the supplemental excerpts of record. Well, if I get it, though, the testimony of the mental experts, including your own, would say that he was mentally ill before he tried to return to work. There was certainly evidence in the record below indicating he had a condition of depression during 1997. Did the expert testimony relate that depression to the accident in which he was involved? It wasn't testimony, but the evidence would have related that. But, again, that's not the basis for summary judgment. The question is, was he getting treatment for that condition while the policy was in force? All right. Thank you, Mr. Vailes. Thank you. Mr. Cates. Thank you, Your Honor. I'm going to try to make three points very quickly. First of all, let's recall that this is a motion of summary judgment. And we've been going back and forth over whether he was treated for the condition causing disability. That seems to me to be a question of fact that should have gone to the finder, in fact, the jury in this case. Second, we haven't discussed the process of nature rule. The problem with that is it hasn't been adopted in Nevada because Nevada courts never, ever have been there. But even as it's applied in California, it has to do with policies that have an immediacy trigger. And this doesn't. Well, this one has a 30-day trigger. Well, but nobody's saying that that's unconscionable. Right. But under the process of nature rule, it can go up to, it can be years, not just 30 days. Well, not in California. Yes, but we're talking about what would Nevada do. No, and Nevada doesn't even have the rule. So if you're going to hypothesize what the Nevada Supreme Court would do when it doesn't even have the rule, and Nevada usually looks to California, and California, which does have the rule, doesn't do that, how can we get there? Well, we have other, we have the Minnesota cases, and we also have the other Federal cases, Kerr-Want, Dodson-Watley. The last thing is, if anyone would like a briefing on that, on the notice of prejudice rule, I'd be happy to ship up a brief tomorrow on that. Appreciate the offer. We'll let you know. Thank you. Thank you very much, counsel, both of you, for the argument. Okay. Just made. And the  court is adjourned. Thank you. Thank you. Thank you.
judges: Bright, Dw Nelson, Rymer